**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFREY BOND and MARY ANN BOND, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| LASER SPINE INSTITUTE, LLC, | : | NO. 10-1086 |
| Defendant. | : | |

**MEMORANDUM RE: DEFENDANT'S MOTION TO QUASH SERVICE OF PROCESS
AND TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

Baylson, J.                                                                                    August 11, 2010

## I.      Introduction

In this case, Plaintiffs Jeffrey and Mary Ann Bond bring claims arising out of allegedly

deficient medical care rendered to Jeffrey Bond by Defendant Laser Spine Institute, LLC ("LSI")

(Doc. No. 1).  Presently before the Court is Defendant's Motion to Quash Service of Process and

to Dismiss, or in the Alternative, to Transfer Venue (Doc. No. 7).  For the reasons discussed

below, the Court will deny Defendant's motion in its entirety.

## II.     Factual Background and Procedural History

Plaintiffs, Jeffrey and Mary Ann Bond, commenced this action on March 11, 2010 (Doc.

No. 1), bringing their claims against Defendant LSI as a result of allegedly deficient surgery

rendered to Mr. Bond at LSI's facility in Tampa, Florida on April 29, 2008, and as a result of

LSI's allegedly negligent follow-up care.  Mr. Bond first began suffering from tingling sensations

in his left hand in 2007, and subsequently underwent EMG and MRI studies that showed he had

bilateral atrophy of his triceps and degenerative disk disease.  (Pls.' Resp. 2.)  Mr. Bond began

exploring minimally invasive treatment options by reviewing the LSI website.  (Pls.' Resp. 2.)

Mr. Bond eventually contacted LSI in March 2008 and spoke with a caseworker who advised

him to send his EMG and MRI reports to Dr. Michael Perry, an LSI physician licensed in

Pennsylvania.  (Pls.' Resp. 2, Ex. C.)  Dr. Perry called Mr. Bond and suggested that LSI could

perform endoscopic surgery in Florida to relieve Mr. Bond's spinal pain.  (Pls.' Resp. 2.)  LSI

assisted Mr. Bond with his travel plans from Pennsylvania to Florida, and Mr. Bond traveled to

Tampa on April 27, 2008.  (Pls.' Resp. 2.)

On April 29, 2008, Mr. Bond underwent endoscopic surgery performed by Dr. Michael

Weiss at an LSI facility in Tampa, Florida.  (Pls.' Resp. Ex. A.)  After surgery, Mr. Bond

returned home to Pennsylvania, and allegedly began experiencing "severe pains shooting through

his body, some of which left him feeling completely debilitated."  (Pls.' Resp. 2.)  Several times

in May 2008, Mr. Bond called LSI and spoke with Dr. Weiss' head nurse, who suggested that the

pain was part of the healing process, and who called in a steroid prescription to Mr. Bond's

Pennsylvania pharmacy after consulting with Dr. Weiss.  (Pls.' Resp. Ex. A.)  Mr. Bond took the

steroids for seven days, but the pain allegedly increased in intensity.  (Pls.' Resp. 2.)  After at

least two more phone calls to LSI, Dr. Weiss concluded that Mr. Bond should fly back to Tampa

for an examination, but he suggested that Mr. Bond get an MRI first.  (Pls.' Resp. 3.)  However,

after Mr. Bond sent Dr. Weiss new MRI results on June 6, 2008, Dr. Weiss determined that LSI

could not assist Mr. Bond.  (Pls.' Resp. 3.)  Dr. Weiss instead told Mr. Bond to see a

neurosurgeon at Bryn Mawr Hospital in Pennsylvania.  (Pls.' Resp. 3.)  Plaintiffs contend that

Dr. Weiss also stated that LSI would send the records to the neurological group at Bryn Mawr

Hospital; however, LSI allegedly failed to do so.  (Pls.' Resp. 3.)

While Mr. Bond was at Bryn Mawr Hospital in early June 2008, the emergency room technician spoke with Dr. Vernon Morris (Pls.' Resp. 3), a doctor at LSI and "lead[er of] the Pennsylvania LSI surgical team." (Pls.' Resp. Ex. C). Dr. Morris recommended to the Bryn Mawr Hospital technician that Mr. Bond be prescribed more steroids. (Pls.' Resp. 3.)

Mr. Bond finally saw a non-LSI neurosurgeon in late June 2008, who recommended immediate cervical fusion surgery, which Mr. Bond underwent at Pennsylvania Hospital on June 29, 2008. (Pls.' Resp. 3.) Mr. Bond alleges that he currently "has difficulty gripping, walking, and can no longer engage in the type of physical activities in which he was engaged prior to his procedure at the Laser Spine Institute." (Pls.' Resp. 3).

On March 11, 2010, Mr. Bond and his wife filed suit against LSI alleging deficient medical care (Doc. No. 1). On April 6, 2010, LSI filed a Motion to Quash Service of Process and to Dismiss, or in the Alternative, to Transfer Venue (Doc. No. 7). Plaintiffs filed their response on April 22, 2010 (Doc. No. 16), and Defendant filed its reply on May 5, 2010 (Doc. No. 18).

## III.    Basis of Federal Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) based on diversity of citizenship, since the parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiffs are residents of Pennsylvania and Defendant is a Florida limited liability company with its principal place of business in Tampa, Florida (Doc. No. 1).

## IV.    Parties' Contentions

### A.    Defendant

LSI first asserts that dismissal is proper for insufficient service of process. LSI argues that Mr. Bond improperly served Laser Spine Institute of Philadelphia, LLC ("LSI Philadelphia")

instead of the entity named in the Complaint, LSI.  (Def.'s Mot. to Quash, Dismiss, or Transfer 2-3.)  LSI further contends that LSI Philadelphia is a "wholly separate entity than the Defendant," "with separate corporate activities and a separate corporate structure."  (Def.'s Mot. to Quash, Dismiss, or Transfer 2.)  Moreover, LSI also asserts that service was improper in the first place even if the two entities were the same because Plaintiffs served Tracey Baughey, an office manager of LSI Philadelphia, who is not an officer upon whom service can statutorily be made.  (Def.'s Mot. to Quash, Dismiss, or Transfer 2, 6.)

LSI further contends that dismissal is proper for lack of personal jurisdiction because LSI has made no sales in the Commonwealth of Pennsylvania, transacted no business in the Commonwealth of Pennsylvania, and availed itself of none of the protections afforded by the Commonwealth of Pennsylvania.  (Def.'s Mot. to Quash, Dismiss, or Transfer 7-8.)

 Finally, LSI argues that either (a) the action should be dismissed for improper venue, or (b) transfer of venue to the Middle District of Florida is proper because LSI does not reside in the Eastern District of Pennsylvania, no substantial part of the alleged events or omissions giving rise to the claim occurred in this district, LSI is not subject to personal jurisdiction in the Eastern District of Pennsylvania, and all individuals involved in this case are in Tampa, Florida.  (Def.'s Mot. to Quash, Dismiss, or Transfer 10-11.)  LSI argues that the public and private factors weighed in a motion to transfer analysis weigh in favor of transfer.  (Def.'s Mot. to Quash, Dismiss, or Transfer 11.)

### B. <u>Plaintiffs</u>

Plaintiffs argue in response that service upon the Pennsylvania corporation was sufficient to serve LSI because the foreign corporation had substantial control over the local subsidiary.

(Pls.' Resp. 4.)  Plaintiffs contend that even if service was insufficient, the proper cure is to quash service and allow Plaintiffs to re-serve the Complaint.  (Pls.' Resp. 4.)  With regard to service accepted by Tracey Baughey, an individual who allegedly held herself out as the "office manager" for LSI, Plaintiffs argue that the root purpose of service is merely fair notice of the suit, which Defendant LSI received.  (Pls.' Resp. 5.)  Moreover, Plaintiffs argue that the issue is now effectively moot since they have since served LSI through its registered agent in Florida by registered mail on April 8, 2010.  (Pls.' Resp. 5; see Doc. No. 15)

Finally, Plaintiffs respond by arguing that this Court has both general and specific personal jurisdiction over Defendant, and that venue is necessarily proper in any district that has personal jurisdiction over a corporate defendant.  (Pls.' Resp. 8-15.)  Moreover, Plaintiffs contend that a transfer of venue would be unjust because all of the private and public interest factors weighed in a motion to transfer analysis favor denying Defendant's motion to transfer venue.  (Pls.' Resp. 15-20.)

## V.    Legal Standards

### A.    Service of Process

Under Rule 4 of the Federal Rules of Civil Procedure and the corresponding Pennsylvania rules on service, the root purpose of service of process is to assure that defendant receives notice of the commencement of action against him.  See Hanna v. Plumer, 380 U.S. 460, 462 n.1 (1965) (stating that actual notice is "of course" the goal of state and federal service of process rules); Gambone v. Lite-Rock Drywall Corp., 124 F. App'x 78, 79 (3d Cir. 2005) (nonprecedential) ("Rule 4 guards the objective of giving notice to the party to be served"); Ayers v. Jacobs & Crumplar, P.A., 99 F.3d 565 (3d Cir. 1996) ("[O]ne of the purposes of the rules regarding service

of process is to provide notice"); Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 486 (3d Cir. 1993) (holding that the purpose behind Pennsylvania rule on service is to provide notice that litigation has commenced, and that procedures used to follow Federal Rule 4 must be "reasonably calculated to give actual notice of the proceedings to the party"); GE Med. Sys. Info. Techs., Inc. v. Ansar, Inc., 2004 WL 2988513 (E.D. Pa. Dec. 23, 2004) (holding that under Pennsylvania law, service must be reasonably calculated to give the defendant notice of the action against it). Under Federal Rule of Civil Procedure 4(h), corporations may be validly served by either "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," or pursuant to state law under Federal Rule of Civil Procedure 4(e)(1). Fed. R. Civ. P. 4(h). Under Pennsylvania Rule of Civil Procedure 424,[1] service upon a corporation may be made upon any of the following persons:

> (1) an executive officer, partner or trustee of the corporation or similar entity, or

> (2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or

> (3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

Pa. R. Civ. P. 424.[2] The propriety of service under Pennsylvania law commonly depends upon the relationship between the person receiving process and the party to the litigation. See Grand Entm't Group, Ltd., 988 F.2d at 485. Additionally, Pennsylvania law provides that an out-of-state defendant may be served by registered mail. Pa. R. Civ. P. 403, 404.

---

[1] Formerly Pennsylvania Rule of Civil Procedure 2180.

[2] The Pennsylvania rules of procedure governing service have been amended a number of times. The differences between the version applicable to this case and the versions discussed in the cases the Court cites do not appear to be material to the issue before the Court. See Grand Entm't Group, Ltd., 988 F.2d at 484, n.6.

When considering a motion to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), the plaintiff bears the burden of persuading the Court that service of process was validly made. Grand Entm't Group, Ltd., 988 F.2d at 488. In addressing such motions, district courts possess broad discretion to either dismiss the action, or retain the case but quash the service that has been made on defendants. Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992); Taylor v. Creditel Corp., 2004 WL 28884208 (E.D. Pa. Dec. 13, 2004). "Dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service." Umbenhauer, 969 F.2d at 30. Dismissal is not proper where the corporation has received notice and is able to respond in a timely fashion with a motion to dismiss. Taylor, 2004 WL 28884208, at *4. The court may also grant an extension of time to perfect service if an improper person has been served. See McKinnis v. Hartford Life, 217 F.R.D. 359 (E.D. Pa. 2003) (finding that where claimant could have reasonably believed that insurance company employee who signed receipt was an appropriate agent and that service was proper, the court denied the insurance company's Fed. R. Civ. P. 4(m) motion and granted the claimant 20 days to effectuate service).

Service upon a local corporation may be effective upon an out-of-state parent entity if the appropriate parent-subsidiary agency relationship exists. See Marzano v. Computer Science Corp., 91 F.3d 497 (3d Cir. 1996) (explaining that a court may pierce the corporate veil if it finds that a subsidiary was a mere instrumentality of the parent corporation—that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent); Dunn v. Beech Aircraft Corp., 276 F. Supp. 91 (E.D. Pa. 1967) (finding that an agency

relationship existed because the parent corporation had substantial control over the local corporation); Del. Valley Surgical Supply Co. v. Geriatric & Med. Ctrs, Inc., 299 A.2d 237 (Pa. 1973) (holding that under what is now Pa. R. Civ. P. 424, service of process was valid as to parent corporation which maintained an officer where service of process was made). "The relevant law is clear. One organization may be the agent for a second, out-of-state organization, and service upon the second, out-of-state organization may be accomplished by the delivery of a summons and complaint to an appropriate person in the first organization." Dunn, 276 F. Supp. at 92 (internal parentheticals omitted).

### B.  Personal Jurisdiction

When considering a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of persuading the court that jurisdiction is proper. Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). To meet this burden, the plaintiff must come forward with competent evidence establishing with reasonable particularity sufficient contacts between the defendant and the forum state. Id.

Federal Rule of Civil Procedure 4(e) authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. Id. at 1221. This Court sits in Pennsylvania, and must therefore apply Pennsylvania law. Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. §§ 5301-5322, provides two bases by which a non-resident defendant may become subject to the personal jurisdiction of the court. The first, "general jurisdiction," exists when a non-resident defendant is carrying on a continuous and systematic part of its general business within the Commonwealth. 42 Pa. Cons. Stat. § 5301.

The second, "specific" (or "forum-related") jurisdiction, exists when a non-resident defendant does any of the acts specifically set forth in the statute, limited to causes of action arising out of or related to the defendant's forum-related activities. 42 Pa. Cons. Stat. § 5322.

Furthermore, under Pennsylvania law, a court may base jurisdiction on the most minimum contact with Pennsylvania allowed under the Fourteenth Amendment's Due Process Clause. 42 Pa. Cons. Stat. Ann. § 5322(b). The touchstone of determining whether the assertion of jurisdiction comports with the Due Process Clause is whether the defendant has sufficient minimum contact with the forum state so that "the suit does not offend traditional notions of fair play and justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The nature of these contacts must be such that the defendant should reasonably anticipate being hailed into court in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The Third Circuit has adopted a two-step approach for determining whether the exercise of personal jurisdiction comports with the Due Process Clause. See Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 541 (3d Cir. 1985) (explaining the test laid out in Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208 (3d Cir. 1984)). First, the court must determine if the plaintiff's claims arose from the defendant's forum-related activities. Id. Second, if the claims arose from forum-related activities, the court must engage in a minimum contact analysis to determine whether the plaintiff has established specific jurisdiction over the defendant. Id. If the claims did not arise out of or are unrelated to the defendant's contact with the forum, the court must determine if the plaintiff has shown that the defendant has maintained a continuous and substantial affiliation with the forum to establish general jurisdiction over the defendant. Id.

## C.  Venue

Under 28 U.S.C. § 1404(a), a district court may transfer an action to any other district where it might have been brought if this transfer is for the convenience of parties and witnesses and in the interest of justice.  28 U.S.C. §1404(a).  The determination of whether to transfer venue pursuant to §1404(a) is governed by federal law.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877-78 (3d Cir. 1995) (federal law applies because questions of venue are procedural, rather than substantive).

Analysis of a §1404(a) motion for transfer has two components.  First, the phrase "where it might have been brought" means that both the original venue and the requested venue must be proper under 28 U.S.C. § 1391.  Jumara, 55 F.3d at 879.  Venue, in a diversity case, is proper (1) where any defendant resides, if all defendants reside in the same state, (2) where a substantial part of the events or omissions giving rise to the claim occurred, or (3) where personal jurisdiction may be had over any defendant, if no other venue is proper.  28 U.S.C. §1391(a).  A defendant corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. 1391©.  Second, because the purpose of allowing §1404(a) transfers is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense," Van Dusen v. Barrack, 376 U.S. 612, 618 (1964), the Court is required to undertake a balancing test in deciding whether the "interests of justice [would] be better served by a transfer to a different forum," Jumara, 55 F.3d at 879.

The Third Circuit has outlined a non-exhaustive list of private and public interest factors to be weighed in this balancing test.  The private interests include:  (1) the plaintiff's forum

preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records.  Id. at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Id. at 879-80.

The Third Circuit has held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed. . . . The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted.  The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer, and unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail."  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (citations and internal quotation marks omitted); see also In re United States, 273 F.3d 380, 388 (3d Cir. 2001) ("[I]n 28 U.S.C. § 1404(a) cases . . . the burden is on the moving party . . . ." (citing Shutte, 431 F.2d at 25)); Jumara, 55 F.3d at 879-80 ("The burden of establishing the need for transfer still rests with the movant," and "courts normally defer to a plaintiff's choice of forum"); Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756-57 (3d Cir. 1973) (holding that Defendant must show the desirability of transferring venue, and must present evidence upon which the court may rely in justifying transfer).

VI. **Discussion**

   A. **Service of Process**

Defendant LSI claims that Plaintiffs improperly served LSI by (a) effecting service on the Pennsylvania subsidiary of LSI, LSI Philadelphia, and (b) by serving Tracey Baughey, an individual who, Plaintiffs allege, held herself out as the office manager of LSI.  LSI thus moves to quash service of process.  Defendant does not argue that the method of service employed by Plaintiffs was unconstitutional, nor that Defendant has been denied adequate notice as a result of service on an office manager of LSI Philadelphia.  Instead, Defendant's apparent objection to the method of service is that Plaintiffs were not entitled to use this more expedient manner of service, but should have instead served process upon the LSI parent corporation in Florida.

Defendant maintains that service of process upon LSI Philadelphia is invalid because Defendant LSI was not "transacting business" in Pennsylvania.  To support its contention, Defendant offers that "Laser Spine Institute of Philadelphia, LLC was not involved in any way in providing care to Plaintiff, Jeffrey Bond," and that LSI Philadelphia is a "wholly separate entity than Defendant."  (Def.'s Mot. to Quash, Dismiss, or Transfer 2.)

Defendant's argument is flawed in two respects.  First, as in <u>Dunn</u>, LSI has "intentionally entered into competition in the Pennsylvania market and is actively present and 'doing business' in the state."  276 F. Supp. at 92-93.  The LSI website advertises that it has "7 locations throughout the U.S." (Pls.' Resp. Ex. C), including a "Consult Office" in Pennsylvania.  <u>See</u> Laser Spine Institute Locations, http://www.laserspineinstitute.com/about/locations (last visited Aug. 6, 2010).  The website also states, "With strategically located regional surgery centers, consult offices in major cities and seminars in nearly every state, LSI continues to deliver relief

to patients in convenient easy to reach locations." Id. Moreover, under the heading "Philadelphia Facility," the website announces that LSI is "pleased to announce the opening of Laser Spine Institute's brand new, state-of-the-art facility in Philadelphia, PA to better serve the demand for minimally invasive spine surgery," see Laser Spine Institute, Philadelphia Facility, http://www.laserspineinstitute.com/philly (last visited Aug. 6, 2010) (emphasis added), suggesting that LSI is doing business in Pennsylvania and has entered the Pennsylvania market through its recently established subsidiary. Under Marzano, it appears to the Court that the Philadelphia subsidiary is a mere instrumentality of the parent corporation LSI. 91 F.3d 497. As in Dunn, service here upon the Pennsylvania corporation was sufficient because the foreign parent corporation has substantial control over the local subsidiary. 276 F. Supp. 91.

Second, Defendant's argument is flawed with regards to service upon a mere "office manager." Defendant argues that service should have instead been effected upon an "officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" under Federal Rule of Civil Procedure 4(h)(1)(B), or a similarly positioned person under state law. Defendant misunderstands that Federal Rule of Civil Procedure 4(h) is a functional rule, not a rigidly formal one. The individual served does not have to be one who is formally designated by the corporation; service must be reasonably calculated to affect notification of the proper authorities within the organization. See, e.g., GE Med. Sys. Info. Techs., 2004 WL 2988513 (holding that under Pennsylvania law, service must be made upon someone who has a sufficient connection to the defendant in order to demonstrate that service is reasonably calculated to give the defendant notice of the action against it); Ins. Co. of N. Am. v. S/S "Hellenic Challenger", 88 F.R.D. 545 (S.D.N.Y. 1980) (holding that what is now Rule

4(h)(1) "does not require that service be made solely upon a restricted class of formally titled officials, but rather permits it to be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service"). Ultimately, as mentioned above, the "root purpose" of service is to effect fair notice to the Defendant of the pending suit.

The facts of Richman, Berenbuam & Assoc., P.C. v. Carolina Casualty Co., 2002 WL 1895900, at *5-6 (E.D. Pa. Aug 14, 2002), are similar to those in the instant matter. In Richman, service was signed for by an individual by the name of Peg Kirby. The Court determined that, despite the plaintiff's failure to provide any documentation that Peg Kirby was an agent of the corporation, "[The Court] will allow plaintiffs to perfect service of process in accordance with the Federal Rules of Civil Procedure" because the defendant "is not disputing actual notice and the statute of limitations has not yet run."

In this case, Plaintiffs first served Tracey Baughey at LSI's Philadelphia office. Plaintiff claims that Ms. Baughey was authorized to accept service and allegedly held herself out as the "office manager" for LSI when she accepted service; LSI counters that she is an employee but not one entitled to receive service because of her low position in the corporation. As in Richman, Plaintiffs have not presented any documentation to show that Ms. Baughey is an appropriate agent of the corporation, or whether or service upon Ms. Baughey was reasonably calculated to ensure notice to the defendant. Accordingly, Plaintiffs have failed to meet their burden of establishing that service on Ms. Baughey was proper service. See McKinnis, 217 F.R.D. at 361; Taylor, 2004 WL 2884208, at *4. However, as in Richman and Taylor, the Court finds that

-14-

Defendant has received fair notice of the suit and was able to respond in a timely fashion with a motion to dismiss. Furthermore, because Plaintiffs have since complied with Pa. R. Civ. P. 403 and 404 by serving LSI in Florida by registered mail through its registered agent, it would serve no purpose to formally quash service under Umbenhauer, 969 F.2d 25 (3d Cir. 1992), the Court will not dismiss the complaint. Accordingly, Defendant's motion to quash service or dismiss the complaint will be denied.

### B.       Personal Jurisdiction

LSI next asserts that personal jurisdiction is invalid because it "has made no sales, transacted no business, and availed itself of none of the protections afforded by the Commonwealth of Pennsylvania." (Def.'s Mot. to Quash, Dismiss, or Transfer 8.) LSI further asserts that it "had and has no reasonable expectation of being hailed into the forum state of Pennsylvania by a Plaintiff who underwent medical care . . . in Tampa, Florida." (Def.'s Mot. to Quash, Dismiss, or Transfer 8.) As explained below, Defendant has substantially understated its contacts with the Commonwealth of Pennsylvania.

To determine whether the exercise of personal jurisdiction comports with due process in the present case, the Court must follow the two-step process laid out by the Third Circuit in Dollar Sav. Bank, 746 F.2d 208. Under this test, the Court must first determine whether the cause of action arises from the defendant's forum or non-forum related activities, and second, analyze the contacts the defendant has made. In the present case, the Court finds that the cause of action arises from Defendant's forum-related activities. Although the allegedly deficient surgery occurred in Florida, the cause of action also arises from LSI's initial reaching out to Mr. Bond through its marketing to Pennsylvania residents, its initial conversations encouraging and

facilitating Mr. Bond's trip to Florida for surgery, and its follow-up care administered to Mr. Bond by LSI staff while he was in Pennsylvania.[3]  For the reasons explained below, the Court finds that it has specific jurisdiction over LSI, thus establishing personal jurisdiction.[4]

A non-resident defendant may be found to have established "minimum contacts" with the forum state sufficient to satisfy specific jurisdiction by deliberately engaging in significant activities that lead to the claims at issue or by creating continuing obligations between himself and residents of the forum state.  Burger King v. Rudzewicz, 471 U.S. 462, 475-76 (1985). Minimum contacts are met when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Id. at 475 (citing Hanson v. Denkla 357 U.S. 235, 253 (1958)); see also McGee v. Int'l Life Ins. Co., 355 U.S. 220 (1957) (holding that a single contract with a resident in a state can be enough to establish specific jurisdiction when a company purposefully reaches out to that state to get specific business).  Here, this Court may properly exercise specific jurisdiction because LSI had multiple direct contacts by reaching out to Mr. Bond in Pennsylvania, and by following-up with Mr. Bond in Pennsylvania, that led in part to the events out of which this lawsuit arose.

Indeed, LSI communicated directly with Mr. Bond while Mr. Bond was in Pennsylvania via Dr. Michael Perry, and encouraged Mr. Bond to travel to LSI's facility in Tampa for surgery. LSI assisted Mr. Bond in making his travel plans to go to LSI in Tampa for surgery.  (Pls.' Resp.

---

[3] In responding to a motion to dismiss on jurisdictional grounds, the plaintiff need only plead a prima facie case to survive the initial motion to dismiss.  Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992).  In determining whether the plaintiff has presented a prima facie case, the Court must accept the plaintiff's allegations as true for purposes of the analysis.  Id.

[4] Because the Court finds that it has specific jurisdiction, personal jurisdiction is established.  Accordingly, the Court need not address the issue of general jurisdiction.  See, e.g., Pulte Home Corp. v. Del. Land Assocs., L.P., 2008 WL 2168788, at *6 (E.D. Pa. May 22, 2008) ("Having determined that there is specific jurisdiction over Defendants, the court will not determine whether it has general jurisdiction.")

Ex. A.)  Additionally, LSI staff spoke with Mr. Bond on the phone repeatedly after the surgery while he was in Pennsylvania, diagnosed his post-surgery pain as "part of the healing process," prescribed steroids for him and called in the prescription to his pharmacy, advised him to see a neurosurgeon at Bryn Mawr Hospital, and advised the Bryn Mawr Hospital emergency room technician to prescribe more steroids.  (Pls.' Resp. Ex. A.)  Moreover, the LSI doctor who advised the Bryn Mawr Hospital emergency room technician, Dr. Vernon Morris, is advertised on the LSI website as "a senior member of the LSI surgical team" and "lead[er of] the Pennsylvania LSI surgical team."  (Pls.' Resp. Ex. C.)

These minimum contacts demonstrate that LSI has purposefully availed itself of the benefits of doing business in Pennsylvania.  If a defendant enjoys the benefits of dealing with Pennsylvania residents under the protections of Pennsylvania law, that defendant has a reciprocal obligation to submit to the state's jurisdiction.  See Int'l Shoe, 326 U.S. at 319 ("[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state.  The exercise of that privilege may give rise to obligations, and, . . . a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.").

The Court must next consider whether the assertion of personal jurisdiction would comport with "fair play and substantial justice."  Burger King, 471 U.S. at 476.  Because LSI has minimum contacts with Pennsylvania under the first two steps of our analysis, it must make a "compelling case" that litigation in Pennsylvania would be unreasonable and unfair.  See id. at 477.  As the Supreme Court has stated, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the

serious burdens placed on the alien defendant." See Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 114 (1987) (plurality opinion). Indeed, Asahi is the only Supreme Court case ever to present so compelling a situation, and it involved a suit in California between parties from Japan and Taiwan. See id. Unlike California's "slight" interest in that case, id., Pennsylvania has a "manifest interest in providing effective means of redress" when a foreign corporation reaches into the state and solicits its citizens. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 325 (3d Cir. 2007); see McGee, 355 U.S. at 223.

The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the suit there. Int'l Shoe, 326 U.S. at 317. This determination depends on an evaluation of the following non-exhaustive factors: (1) the burden on the defendant; (2) the plaintiffs' interests in obtaining convenient and effective relief; (3) the forum state's interest in adjudicating the dispute; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the shared interests of the states in furthering fundamental substantive social policies. World-Wide Volkswagen, 444 U.S. at 292. Where a defendant who has purposefully directed its activities at a forum resident seeks to defeat jurisdiction, that defendant must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable. Burger King, 471 U.S. at 477.

As to the first factor, Defendant has not alleged any facts nor presented any argument showing that the assertion of personal jurisdiction would cause any severe or inequitable burden. Accordingly, the burden on LSI to defend the action in Pennsylvania "is not severe by today's standards." Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990). This is not a case where the defendant is required to defend itself across national borders. See Asahi, 480 U.S. at

114. LSI has stressed the difficulty of litigating this case in Pennsylvania rather than in Florida, due to the expense of transporting documents and witnesses from Florida to Pennsylvania. While this is a valid consideration, the Court does not believe that litigation in Pennsylvania would impose an unfair burden on LSI, especially considering Plaintiffs' strong interest regarding the second factor in obtaining convenient relief in their home state.

Regarding the third factor, "Pennsylvania has a strong interest in protecting its residents from out-of-state corporations, as well as an interest in providing residents with a means of redress for injuries inflicted by out-of-state defendants." Zubyk v. LPBOC Hotel, Ltd., 2000 WL 963168, at *11 (E.D. Pa. June 27, 2000); see also, e.g., Mesalic, 897 F.2d at 701-02). Regarding the fourth and fifth factors, there is no indication that judicial resources would be wasted here, or that the interests of justice would be better served in another forum. Therefore, the Court finds that asserting personal jurisdiction over Defendant would comport with traditional notions of fair play and substantial justice.

Defendant relies heavily on Papercraft Corp. v. Procter & Gamble Co., 439 F. Supp. 1060 (W.D. Pa. 1977) for the proposition that a corporate parent is not subject to jurisdiction in a district because of the in-district activities of its subsidiary. In Papercraft, the court was ruling on venue rather than jurisdiction. Id. at 1062, n.1. However, this 1977 case did not, of course, consider internet-based evidence showing the parent's close relation to the subsidiary, as Plaintiffs have shown in this case.

Accordingly, the Court concludes that, for purposes of Defendant's motion to dismiss, Plaintiffs have offered sufficient jurisdictional facts to establish that jurisdiction pursuant to 42 Pa. Cons. Stat. §§ 5301-5322 is proper.

## C.     Venue

Under the two-step test set forth by the Third Circuit in Jumara for 28 U.S.C. § 1404

motions, this Court must first consider whether the case "might have been brought" in both the

original venue and the requested venue; that is, whether venue is proper under 28 U.S.C. § 1391.

Jumara, 55 F.3d at 879.  Because personal jurisdiction is proper here in the Eastern District of

Pennsylvania, venue is necessarily proper in this district under § 1391.  Additionally, venue

would be proper under 28 U.S.C. § 1391 in Defendant's requested venue of the Middle District

of Florida because the allegedly deficient surgery occurred in LSI's Tampa, Florida facility.

The second step under Jumara is to undertake a balancing test in deciding whether the

"interests of justice [would] be better served by a transfer to a different forum."  Jumara 55 F.3d

at 879.  Considering the private and public interests enumerated by the Third Circuit in Jumara,

the Court finds that such a transfer under §1404 is not warranted.[5]

---

[5] A final line of cases bears mentioning.  As Plaintiffs correctly note in their response, Defendant incorrectly equates a Rule 12(b)(3) motion to dismiss for improper venue pursuant to 28 U.S.C. § 1391 (curable by a transfer under 28 U.S.C. §1406) with a motion to transfer to a more convenient venue pursuant to 28 U.S.C. § 1404(a).  (Def.'s Motion to Quash, Dismiss, or Transfer 10.)  However, Plaintiffs also incorrectly equate a motion to transfer to a more convenient forum pursuant to § 1404(a) with a motion to dismiss under the common-law doctrine of forum non conveniens.  (Pls.' Resp. 14-15.)

Under the common law doctrine of forum non conveniens, a court may refuse to exercise valid jurisdiction over a matter where there is a more appropriate forum available to the parties if it is too inconvenient for the Defendant or for the Court to have a trial in the original jurisdiction.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) (granting dismissal under forum non conveniens because it would be inconvenient for Scottish litigants and witnesses to have trial in Pennsylvania, and would be inconvenient for a U.S. District Court to apply unfamiliar Scottish law).  However, the only option under forum non conveniens is dismissal; there is no option to transfer.  As explained in Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 721-22 (1996), the transfer of venue function of the forum non conveniens doctrine has been superseded by 28 U.S.C. § 1404(a), see Piper Aircraft Co., 454 U.S. at 253, and to the extent that the Supreme Court continues to recognize that federal courts have the power to dismiss damages actions under the common-law forum non conveniens doctrine, the Supreme Court has done so only in "cases where the alternative forum is abroad," Am. Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994); see also, e.g., Piper Aircraft Co., 454 U.S. at 265-69.

Dismissal under the forum non conveniens doctrine would be improper in this case.  As explained above, it would not be overly inconvenient to require Defendant to litigate this case in the Eastern District of Pennsylvania.  Additionally, the Eastern District would be applying familiar U.S. state law in this case.  Therefore, it is not so inconvenient for Defendant or the Court to have a trial in this jurisdiction so as to require dismissal under forum non conveniens.

1.     **Private Interests**

   a.     **Plaintiff's Preference**

As mentioned above, it is "black letter law" in the Third Circuit that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." Shutte, 431 F.2d at 25. Moreover, where the plaintiff files suit in his home forum, as the case is here, "that choice is entitled to considerable deference." Ignati v. Columbia Props. Harrisburg LLC, 2010 WL 2471671, at *2 (E.D. Pa. June 15, 2010).

In this case, Plaintiffs are residents of the Eastern District of Pennsylvania and filed suit in their home forum. As such, this district retains an interest in the parties and the subject matter of this case. See id. at *2. Moreover, Plaintiffs argue that this district is much more convenient for Mr. Bond because of his spinal pain, and more convenient for the bulk of Plaintiffs' witnesses who are located in Pennsylvania. Additionally, many of the events giving rise to this lawsuit occurred in Pennsylvania: Mr. Bond's numerous phone calls to LSI, Mr. Bond's medical tests and prescriptions ordered by LSI, and the Pennsylvania doctors that LSI suggested Mr. Bond see in Pennsylvania. Given that Plaintiff's choice of venue should not generally be disturbed unless there is no connection between the chosen forum and the lawsuit, the Court finds this factor to weigh against transfer.

   b.     **Defendant's Preference**

Defendant's choice of forum is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." Id. at *3. Defendant's preference for the Middle District of Florida thus weighs lightly in favor of transfer.

### c.     <u>Whether the Claim Arose Elsewhere</u>

It is well-established that "[w]hen the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight." <u>Id.</u> Nonetheless, the final determination in a motion for transfer of venue "does not rest on the situs of the tort;" rather, it is simply one consideration in the analysis. <u>Id.</u>

In this case, the allegedly deficient surgery occurred in the Middle District of Florida. Defendants argue that this factor is important since it will be difficult for them due to the expense of transporting documents and witnesses from Florida to Pennsylvania if the case is retained in this forum. However, the allegedly negligent follow-up care and the additional medical treatment Mr. Bond underwent to relieve the alleged harm caused by LSI occurred in Pennsylvania. Thus, Plaintiffs argue that this factor does not favor any particular venue.

The Court finds that the claim arose in both Philadelphia and Florida. Trial would be more expensive for Plaintiffs in Florida and for Defendant in Pennsylvania. Therefore, LSI has not met its burden of identifying any real interests in efficiency or convenience that would be harmed by retention of the case in this district, and it appears to the court that Defendants merely seek to "shift the inconvenience" to the Plaintiffs. Thus, the court finds that this factor does not favor any particular venue.

### d.     <u>Convenience of the Parties</u>

The convenience of the parties factor weighs against transfer. Defendants have their corporate office in Tampa, Florida, but have a subsidiary in this district. Plaintiffs, on the other hand, reside in the Eastern District of Pennsylvania and will likely be active participants in all

crucial court proceedings.  Further, Mr. Bond has "serious physical limitations and is not of

significant financial means," and "will be forced to endure travelling to Florida while continuing

to suffer spinal pain" if the action is transferred.  (Pls.' Resp. 17.)  Moreover, "[w]here there are

only two parties, there is good reason why it should be tried in the plaintiff's home forum if that

is his choice. . . . [A] real showing of convenience by a plaintiff who has sued in his home forum

will normally outweigh the inconvenience the defendant may have shown."  Koster v. Am.

Lumbermens Mut. Cas. Casualty Co., 330 U.S. 518, 524 (1947).  Plaintiffs have made a real showing

of convenience.  "Accordingly, the interests of justice favor a forum close to Plaintiffs so as to

permit their full input into the litigation."  Ignati, 2010 WL 2471671, at *3.

      e.      **Convenience of the Witnesses**

Plaintiff was treated by health care professionals in and around Philadelphia before and

after his surgery at LSI in Tampa, Florida.  (Pls.' Resp. Ex. A.)  Plaintiffs anticipate calling some

of those caregivers to testify to the alleged damage done by LSI.  (Pls.' Resp. 18.)  All of those

witnesses, as well as Mr. and Mrs. Bond themselves, reside in or near the Eastern District of

Pennsylvania and are material witnesses.  (Pls. Resp. 18.)

Though LSI asserts that "all individuals involved in care or treatment performed such

care or treatment in Tampa, Florida," LSI identifies only four material witnesses in Florida

(Def.'s Reply 3), and the Court notes that three of these four are "[p]arty witnesses or witnesses

who are employed by a party" who have "little impact on the 'balance of convenience' analysis

since each party is obligated to procure the attendance of its own employees for trial."  Id. at *4.

Additionally, the LSI website reveals that Dr. Perry, the LSI doctor who counseled Mr. Bond to

come to Florida in the first place, travels throughout the U.S. and Canada to lead LSI seminars and provide personal consultations. (Pls.' Resp., Ex. C.)

LSI identifies one witness who "cannot be compelled to testify in Pennsylvania" because she is a "former employee" of LSI. (Def.'s Resp. 3.) Defendant asserts that she has "personal knowledge regarding the medical care provided to Mr. Bond in Tampa, Florida, and/or ha[s] knowledge regarding communications with Plaintiff(s) regarding his care prior and subsequent to Mr. Bond's surgery in Tampa, Florida." (Def.'s Reply 3.) However, LSI fails to establish or even suggest—as is their burden—that this witness would be unavailable or unwilling to testify in this district, or that testifying here will cause this person any undue hardship. Id. at *4 (citing Super. Precast, Inc. v. Safeco Ins. Co. of Am., 71 F. Supp. 2d 438, 447 (E.D. Pa. 1999) (noting that defendant had burden to show that nonparty witnesses would be unavailable or unwilling to testy in this district or that they would suffer undue hardship)).

In short, the majority of potential witnesses live in the Eastern District of Pennsylvania. The majority of LSI's witnesses are party witnesses and LSI is obligated to procure the attendance of its own employees for trial. Given these circumstances, the Court finds that this factor weighs against the Motion to Transfer.

### f. Location of Books and Records

As the claim arose in both Philadelphia and Tampa, the relevant medical records and evidence are found both in both locations. Plaintiffs argue that the vast majority of these records are located in the Philadelphia region. However, Defendant claims that Florida provides a greater ease of access to sources of proof, but Defendant has failed to demonstrate that any

specific relevant documents or other evidence cannot be produced in this forum.  Thus, the court finds that this factor does not favor any particular venue.

For the above-stated reasons, the private interest factors weigh in favor of denial of the transfer motion.

### 2. **Public Interests**

The majority of the public factors listed by the Third Circuit in <u>Jumara</u> are not particularly relevant in the medical malpractice case before the Court.  As to the first factor, judgments from either this Court or the Middle District of Florida would be enforceable against Defendant LSI.  Under the second factor, the practical considerations that could make the trial easy, expedious, or inexpensive are the same for both courts, and there is no claim under the third factor that either court is facing administrative difficulty due to a congested docket.

The main public interest factor at stake is the fourth factor—the local interest in deciding controversies at home.  Pennsylvania has an interest in ensuring that residents of Pennsylvania are protected when they arrange for medical care from an out-of-state corporation targeting Pennsylvania residents.  <u>See</u> <u>Zubyk</u>, 2000 WL 963168, at *11 ("Pennsylvania has a strong interest in protecting its residents from out-of-state corporations, as well as an interest in providing residents with a means of redress for injuries inflicted by out-of-state defendants."); <u>Super. Precast</u>, 71 F. Supp. 2d. at 448 ("[T]here is a strong local interest in this case remaining in this district, since a resident of the district allegedly was injured and seeks a judicial remedy for that injury; this district has a strong interest in protecting its residents and providing a forum for resolution of that dispute.").  Thus, this factor weighs in retaining the case in this district.

Finally, both this Court and the Middle district of Florida are presumed to be equally capable of applying the tort law of Pennsylvania or Florida—this is a standard medical

malpractice case. Also, trial can be scheduled promptly in this district. Overall, the public interest factors have little impact on the Court's balancing analysis, but do weigh slightly in favor of denial of the transfer motion.

**IV.** **Conclusion**

For the aforementioned reasons, the Court concludes that Defendant was properly served, is subject to personal jurisdiction in Pennsylvania, and that venue in the Eastern District of Pennsylvania is proper. Accordingly, the Court will dismiss Defendant's motion in its entirety.

An appropriate Order follows.

O:\CIVIL 09-10\10-1086 - Bond v. LSI\Bond v. LSI - 10-1086 - Memo re Mot to Transfer.wpd